The Attorney General has received your request for an opinion wherein you ask the following questions: "1. Would it be a violation of state law for a state college or university to employ a person who is related within the third degree of consanguinity to a member of the Board of Regents which governs that particular institution? "2. Would it make a difference whether or not the person was employed by contract prior to the member of the Board of Regents taking his position? If so, how? "3. Would it be a violation of the nepotism statutes for a Board of Regents of a state college or university to approve a contract for continued employment of a faculty member at a state college or university governed by the Board who is related within the third degree of consanguinity to a member of the Board? "4. Would a person married to a relative of a Board of Regents member be considered the same as the relative with respect to the nepotism statutes?" Your first question must be answered in the affirmative by reference to Title 21 O.S. 481 [21-481] through 21 O.S. 487 [21-487] (1971). 21 O.S. 487 [21-487] contains the following language: "Under the designation executive, legislative, ministerial or judicial officer as mentioned herein are included . . . officers and boards of managers of the State University and its several branches, . . . ." which specifically applies these nepotism provisions to the various Boards of Regents of all state colleges and universities and their branches. The answer to your next three questions (2, 3, and 4) comes from a previous ruling of the Attorney General concerning the obligations of all governing bodies subject to Oklahoma nepotism pro visions. In Att'y. Gen. Op. 176 (1972), the Attorney General held: ". . . Where a person is elected a member of a Governing Body within the State of Oklahoma, at which time the elected official has relatives then employed by said Governing Body on a month to month or continuous basis, who are related to him by affinity or consanguinity within the third degree, then under the provisions of 21 O.S. 481 [21-481] through 21 O.S. 487 [21-487] (1971), the Governing Body must terminate the employment of said employees when the elected official takes office; provided, however, that those employees employed by contract prior to the election of the relative to the Governing Body may continue their employment for the contractual period." This same rationale was applied and upheld in a more recent Attorney General's Opinion, Att'y. Gen. Op. No. 79-28 (April 4, 1979), concerning a local school board's authority to rehire, under contract, a tenured teacher. In that opinion this office held as follows: ". . . as long as the tenured teacher continues to serve under the contract which was in effect prior to the spouse's election to the school board, there is no conflict under the nepotism statutes. However, at the time when the tenured spouse-teacher's contract is to be renewed, such renewal constitutes a new appointment and would, therefore, be prohibited by the nepotism statute." It is, therefore, the official opinion of the Attorney General that all Boards of Regents for the various colleges and universities and their branches are subject to the prohibitions contained in 21 O.S. 481 [21-481] through 21 O.S. 487 [21-487] (1971) and it is a violation for the Board to approve employment for employees related to a board member within the third degree of consanguinity or affinity. It is likewise a violation for an existing employee to continue such employment after the board member takes office, provided, however, such employee may fulfill his or her current contractual obligation prior to termination. (WILLIAM S. FLANAGAN) (ksg)